GrayMatters Law & Policy
Megan Gray (CA Bar 181204)
2017 Kalorama Road NW #3
Washington, DC 20009
202-468-8869
mg@megangray.com

Attorneys for Rube P. Hoffman Co., Inc.
dba Hoffman California International Fabrics

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| RUBE P. HOFFMAN COMPANY, INC., a California corporation, d.b.a. HOFFMAN CALIFORNIA INTERNATIONAL FABRICS,<br><br>Plaintiff,<br><br>v.<br><br>EARTHWISE BAG COMPANY, INC., a California company, BUNZL DISTRIBUTION INC., a Missouri company, and ALBERTSONS COMPANIES, INC., a Delaware company,<br><br>Defendants. | Case No.: 8:25-CV-2838<br><br>**COMPLAINT FOR COPYRIGHT INFRINGEMENT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff, Rube P. Hoffman Company, Inc. ("Plaintiff" or "Hoffman"), for its Complaint, alleges and avers as follows:

JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to Section 501 of Title 17 of the United States Code, and Sections 1331 and 1338(a) of Title 28 of the United States Code. Venue in this district is proper pursuant to Sections 1391(b) and (c) and 1400(a) of Title 28 of the United States Code.

PARTIES

2. Hoffman is a corporation organized and existing under the laws of the State of California, with its principal place of business at 25792 Obrero Drive, Mission Viejo, California 92691. Hoffman does business as Hoffman California International Fabrics and Hoffman California Fabrics, and is in the business of designing, manufacturing, and selling fabric.

3. Upon information and belief, Defendant Earthwise Bag Company, Inc. ("Earthwise") is a corporation organized and existing under the laws of the State of California, and has recently moved its principal place of business to One Cityplace Drive, Suite 200, St. Louis, MO 63141. On information and belief, Earthwise may now be a division of Defendant Bunzl but has yet to correct or update its California corporation records.

4. Upon information and belief, Defendant Bunzl Distribution Inc. ("Bunzl") is a Missouri corporation having its principal place of business at One Cityplace Drive, Suite 200, St. Louis, MO 63141.

5. Upon information and belief, Defendant Albertsons Companies, Inc. ("Albertsons") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 250 E. Park Center Blvd., Boise, Idaho 83706. In addition, Albertsons has retail stores in California.

6. The true names and capacities, whether individual, corporate, associate, or otherwise of Defendants sued herein as DOES 1 through 10, inclusive, are currently unknown to Plaintiff, who therefore sues said Defendants by such fictitious names. Plaintiff will seek leave of Court to amend this Complaint to show the true names and capacities of the Defendants designated herein as DOES when their identities are ascertained. Whenever in this Complaint reference is made to "Defendants, and each of them," such allegation shall be deemed to mean the acts of Defendants acting individually, jointly, and/or severally.

7. Each of the Defendants acted as an agent for each of the other Defendants in doing the acts alleged, and each Defendant ratified and otherwise adopted the acts and statements performed, made, or carried out by each of the other Defendants so as to make them directly and vicariously liable to Hoffman for the conduct complained of herein, including but not limited to Defendant(s)' acts of misrepresentation and/or concealment as to their cessation of sales of the Infringing Product.

8. Defendants, and each of them, are subject to the jurisdiction of this Court and have pictured, reproduced, adapted, displayed, copied, advertised, manufactured,

distributed, sold, and/or offered for sale, in this judicial district, products that infringe on Hoffman's Copyrighted Design.

SUMMARY OF THE CASE

9. Hoffman is a family-owned business with an illustrious history in the garment design and manufacturing industry. Originally founded in the early 1900's by Rube P. Hoffman in the heart of the Los Angeles Garment District, the company's early business focused on the sale of bolts of fabric, primarily wool. During his enlistment in the Korean War, Rube's son Walter Hoffman spent time in Hawaii, where he fell in love with the Hawaiian culture, landscape, and artwork. Upon his honorable discharge, Walter returned to the mainland to take over the family business. Inspired by his love for all things Hawaiian, Walter set forth to transform the company's business into a designer and producer of Hawiian-style prints and fabrics. Today, the company is run by Walter's son Tony Hoffman and grandson Aaron Hoffman, the third- and fourth-generation Hoffmans to lead the company.

10. For generations, Hoffman has been and remains one of the leading developers of fabric designs, especially in tropical-style and aloha prints. Hoffman is known throughout the industry as a true pioneer of the tropical print and, in fact, the Hoffman name has become almost synonymous with Hawaiian prints. As noted in a December 30, 1999 *Los Angeles Times* article, "a host of entrepreneurs such as…apparel makers Walter and Phillip Hoffman…helped transform surfing into a multi-billion dollar

lifestyle industry." *Surfing Girl* magazine aptly stated, "If you own a Hawaiian print today, chances are the fabric came from Hoffman." Hoffman has also been mentioned in the *The Hawaiian Shirt* book, which chronicles the history of the Hawaiian shirt.

11. Walter Hoffman, President of Hoffman California Fabrics until his death, was known as the "Sultan of Surfwear," as stated in the *Los Angeles Times* article. Moreover, surf historian Allan Seymour is quoted in the *Los Angeles Times* as saying that Walter Hoffman is "one of the true founders of the surf industry. Bruce Brown did 'The Endless Summer' movie, Hobie Alter brought [surf]boards to the masses, John Severson founded *Surfer* magazine, and Walter Hoffman supplied the fabric."

12. Hoffman's designs are known as the finest tropical apparel available: Mick Jagger, Jimmy Buffett, and Tom Selleck have been pictured in Hoffman prints. In fact, Hoffman designed the famous red-parrot shirt that Tom Selleck wore in "Magnum, P.I." The original shirt hangs in the Smithsonian Institute of American History in Washington, D.C., along with Lindbergh's "Spirit of St. Louis." Hoffman's copyrighted designs are frequently sighted on current celebrities, in film and TV. In 2025, for example, Hoffman's designs were prominently worn on the AppleTV show "Tires" and worn by actor Bryan Cranson in the season finale of "The Studio."

13. Quality is the foremost priority at Hoffman. Unlike most commercial fabrics, Hoffman's fabrics have color applied by hand for a crisper, more beautiful look. As *The Fabric Shop Network News* remarked in 2003, "What makes Hoffman prints so

distinctive? Without a doubt, it is their combination of detailed artwork and precise screen engravings…This is no easy feat and many manufacturers have a difficult time matching [Hoffman's high quality]." It is this highly developed aesthetic for authenticity and quality that sets Hoffman in a league of its own. As a result, Hoffman's designs are among the most famous and beloved designs in the "California-style" and "beach" segments of the fabric industry. In 2003, Hoffman received the internationally prestigious Cotton Inc.'s Textile Designer Award for Design Excellence and Innovation. Hoffman's designs have become firmly associated with the quality and creativity of Hoffman.

14. The quality of Hoffman's designs has been recognized around the world. The Italian fashion magazine *Vogue Italia* ("L'Uomo Vogue"), focused on style and culture, published an entire issue on Hoffman designs, demonstrating the worldwide appeal of Hoffman's original designs.






15. In recognition of Hoffman's aesthetic contributions, the city of Dana Point in Orange County installed permanent bronze statutes of the Hoffman brothers at Waterman's Plaza, across from Doheny State Beach. As city officials announced, Walter and Philip Hoffman are surf innovators, champions, artists, and industry leaders who have had an "immense impact locally and worldwide."




16. The venerable *Wall Street Journal* newspaper wrote an extended and colorful photographic obituary when the long-time President of Hoffman died in 2024, entitled "Walter Hoffman, Who Brought Surfing Wear to the Masses, Dies at 92," acknowledging that he created the culture, and business, of surfing with his fabric designs. (July 18, 2024).



THE WALL STREET JOURNAL.

World Business U.S. Politics Economy Tech Markets & Finance Opinion Free Expression Arts Lifestyle Real Estate Personal Finance Health Style

BUSINESS

**Walter Hoffman, Who Brought Surfing Wear to the Masses, Dies at 92**

Hoffman was a member of a small group of Southern California entrepreneurs in the '50s and '60s who helped create the culture—and business—of surfing

17. Hoffman has devoted a significant amount of its business (indeed, almost its entire business) to the creation and commercial exploitation of Hoffman's designs. Hoffman staffs a department of in-house designers who are constantly creating new artwork. Countless hours are devoted to research and design development. Every year, Hoffman's in-house art department is responsible for creating a plethora of new patterns, styles, and colors.

18. Fabric designers, like Hoffman, routinely undertake great efforts to protect their designs, including copyright infringement litigation. A *Los Angeles Times* article dated February 2, 2001 describes these efforts. As is well known in the industry, and particularly by these Defendants (as made obvious by the below-described facts), designs such as those owned by Hoffman were and are protected by copyright.

19. Hoffman is the exclusive owner in the United States of the copyright to the fabric design known as KN2867, which is the subject of US Copyright Registration VA-1-090-251 ("Copyrighted Design"), issued May 16, 2001. The registration of this Copyrighted Design creates a legal presumption in favor of the validity of Hoffman's copyright in that design.

20. A true and correct color copy of the item that infringes the Copyrighted Design is shown below ("Infringing Product"). Its infringing nature is readily determined with side-by-side comparisons and overlays as shown below.




HOFFMAN DESIGN


INFRINGING ITEM

OVERLAY OF HOFFMAN DESIGN ON TOP OF INFRINGING ITEM




INFRINGING ITEM


HOFFMAN DESIGN

## DEFENDANTS' INFRINGING ACTS

21. On or about April 11, 2025, a Hoffman customer familiar with Hoffman's Copyrighted Design purchased an Infringing Product from an Albertsons grocery store in Hawaii.

22. Notably, Hoffman has pursued Albertsons many times for its dealings in product infringing other copyrighted designs owned by Hoffman, including but not

limited to lawsuits filed in this judicial district in 2003 and in 2006 (case numbers 08433 and 01338).

23. On information and belief, Defendants, and each of them, have willfully and/or negligently reproduced, adapted, and/or displayed Hoffman's copyrights by manufacturing, distributing, advertising, selling, and/or offering for sale infringing products bearing Hoffman's Copyrighted Design without Hoffman's authorization. Hoffman has neither licensed nor authorized Defendants to reproduce, adapt, and/or display Hoffman's Copyrighted Design nor manufacture, distribute, advertise, sell, or offer for sale the Infringing Product.

24. On information and belief, despite being put on notice by Hoffman of the infringing nature of this product, Defendants willfully continued to distribute, sell, and offer to sell Infringing Product.

25. The infringing conduct of Defendants, and each of them, was and is willfully done with knowledge of, and/or reckless disregard for, Hoffman's Copyrighted Design, and for the purpose of profiting from unauthorized transactions involving Hoffman's Copyrighted Design.

26. At least as late as November 3, 2025, Albertsons continued to sell the Infringing Product (at the same price, too) despite its knowledge of its infringing nature. Albertons had this knowledge at least as of the date of its receipt of Hoffman's June 20, 2025 cease-and-desist letter, which was delivered to and received by Albertson's legal

department. Nor was this an errant sale – Albertsons also sold this Infringing Product on November 2, 2025 and September 27, 2025 . See photo of Infringing Product with purchase receipt:






27. Indeed, Albertsons prominantly positioned, promoted, and advertised the Infringing Product at its checkout aisles, as shown below. At some checkout stations, the Infringing Product was the only option available to customer, as shown in the photos.


THE CAFE
EW729 SAFEWAY MATERIAL
MULTI TOTE
Every Day!
3.99
ea
$3.99




28. Albertsons completely, and callously, disregarded Hoffman's cease-and-desist letter from months earlier, and did not immediately or subsequently stop selling the Infringing Product even after having unquestionable knowledge of Hoffman's claim. Such blatant disregard of Hoffman's copyright is particularly offensive given Albertsons' previous litigation with Hoffman and awareness of the credibility underlying Hoffman's claim. Albertsons' continued sale of the Infringing Product is even more shocking given Albertsons' awareness from prior tangles with Hoffman that Hoffman does not usually allow an infringer to sell Infringing Product as part of settlement terms; Hoffman instead requires destruction of Infringing Product (with affidavit and photographic evidence) or relinquishment to Hoffman for disposal.

29. On information and belief, Albertsons purchased the Infringing Items from Defendants Earthwise and/or Butzl. Defendants Earthwise and Butzl are part of an international conglomerate and, on information and belief, have sold or distributed the Infringing Product to additional parties in the US and abroad.

30. Defendant Earthwise falsely claims authorship of designs on its website, in addition to positioning itself as a "do good" company at odds with this theft. Earthwise's website proclaims, "Today, we have grown to operate with a dedicated design team, international and domestic manufacturing partners, and a fully integrated supply chain that are all in alignment with our sustainable vision." On information and belief, and as documented on Linkedin, Earthwise employs numerous artists, graphic designers, and creative directors; Earthwise well knew this theft constituted or had a significant chance of constituting copyright infringement.

31. Defendant Earthwise is keenly aware of the copyright protection associated with aloha designs. Earthwise was sued in 2019 in this judicial district for infringing another beach scene on grocery bags (*Westmoreland v. Earthwise and Kroger*, 19-cv-01591). Earthwise has been sued for copyright infringement for designs appearing on its grocery bags multiple additional times.

32. On information and belief, Earthwise was well-aware that obtaining beach or aloha shirt designs from vendors or stock image providers such as Adobe is deeply risky and little more than a choice to play with fire, making Earthwise an intentional or

willfully blind infringer. Any attempt by Earthwise to claim innocence or reasonable reliance when purchasing stock images falls flat as a mere pretextual excuse, a functional fig leaf for Earthwise's intentional infringement.

33. On information and belief, Defendants have a history of violating copyrights.

34. On information and belief, Defendants have infringed other copyrighted designs owned by Hoffman, in addition to the Copyrighted Design.

35. On information and belief, Defendants have failed to preserve evidence in connection with this matter. In Hoffman's attorney's June 20, 2025 letter to Defendants, she explicitly reminded Defendants that they were required to take "prompt and effective measures to preserve all potential evidence regarding these claims. This means that, as of this date, you must stop any regular or routine deletion or destruction of emails that relate to tote bags, fabric design, copyright protection, product design, product manufacturing, product sales, product promotion and advertisement, and website tracking. You must preserve all e-mails, other electronic messages, and all records relating to these matters. In short, you must take affirmative steps to make sure that information of this kind is preserved until all claims concerning Hoffman's copyright are resolved."

36. Yet, in a much larger case in which the federal and state governments sued Albertsons in the District of Oregon (case number 3:24-cv-00347), the judge determined

that Albertsons intentionally deleted relevant text messages and that Albertsons failed to take resonable steps to preserve that important evidence.

CLAIM FOR RELIEF
(Copyright Infringement)
[17 U.S.C. § 501]

37. Hoffman incorporates by reference the averments of the preceding paragraphs as though fully set forth.

38. At all relevant times, Hoffman has owned all right, title, and interest in and to the Copyrighted Design as delineated herein.

39. Hoffman has complied in all respects with Title 17 of the United States Code, secured the exclusive rights and privileges in and to the above referenced copyrights, and in compliance with the law has obtained from the Register of Copyrights the appropriate certificate of registration, which constitutes prima facie evidence of the validity of the copyright and of the facts stated in the certificate.

40. Prior to Defendants' acts complained of herein, Hoffman sold fabric bearing the Copyrighted Design to third parties in the fashion and apparel industries.

41. Following Hoffman's distribution of fabric bearing the Copyrighted Design, Hoffman was informed by a critically important customer in Hawaii who had previously purchased fabric bearing the Copyrighted Design that Albertsons was selling grocery bags bearing a design that was identical or substantially similar to the Copyrighted Design. Hoffman's customer was disturbed by this discovery. After all, nobody wants to

dress like a grocery bag. Even more embarassing, the Infringing Product is explicitly designed to look like a traditional button-down Hawaiian shirt, even using details like coconut-shell buttons and shirt hems, contributing to the overall deceptive impression that the product originates from or is authorized by Hoffman.

42. As shown by the images herein, a comparison of the Infringing Product and Hoffman's Copyrighted Design demonstrates the substantial similarity of the designs in terms of their elements, composition, colors, arrangement, layout, and overall appearance. The arch of every blade of grass, the waft of every cloud, the sway of every palm frond is identical to Hoffman's Design. Indeed, had any of the Defendants undertaken a 30-second Google image search, given the length of time that Hoffman has sold fabric bearing the Copyrighted Design, they would have likely instantly recognized that their contemplated use would be infringing.

43. Hoffman is informed and believes and thereon alleges that Defendants had access to the Copyrighted Design including, without limitation, shirts being sold in the marketplace bearing lawfully printed reproductions of the Copyrighted Design.

44. After the date of the filing for registration of the above referenced copyright and continuing to date, Defendants have infringed Hoffman's Copyrighted Design by reproducing, adapting, advertising, and/or displaying, without Hoffman's consent, Hoffman's Copyrighted Design for the manufacture, distribution, sale, and/or offer for

sale of the Infringing Product, which are copies of or bear a substantial similarity to Hoffman's Copyrighted Design.

45. On information and belief, Defendants made unauthorized use of Hoffman's Copyrighted Design in wide-spread commercial advertising and promotion directed to the public at large, which such use infringed and is infringing Hoffman's Copyrighted Design.

46. On information and belief, said conduct by Defendants was and is willfully done with knowledge of Hoffman's Copyrighted Design, and/or was and is negligently done.

47. Hoffman has no adequate remedy at law. The said conduct of Defendants has caused and, if not enjoined, will continue to cause irreparable damage to the rights of Hoffman in its Copyrighted Design.

48. As a result of Defendants' wrongful conduct, Hoffman is entitled to injunctive relief and damages.

49. By reason of Defendants' acts of copyright infringement as alleged herein, Hoffman has suffered, and will continue to suffer, substantial damages to its business in the form of diversion of trade, loss of profits, and a dilution in the value of Hoffman's rights and reputation, all in amounts that are not yet ascertainable, but not less than the jurisdictional minimum of this Court.

50. By reason of Defendants' infringement of Hoffman's copyright as alleged herein, Defendants are liable to Hoffman for the actual damages incurred by Hoffman as a result of the infringement, and for any profits of Defendant directly or indirectly attributable to such infringement.

PRAYER FOR RELIEF

WHEREFORE, Hoffman demands judgment against Defendants as follows:

1. That Defendants, and all of those acting in concert with them, including their agents and servants, be permanently enjoined from manufacturing, vending, importing, distributing, selling, offering for sale, displaying, promoting or advertising any copy, reproduction, colorable imitation of, or derivative work based upon the Copyrighted Design or any other proprietary Hoffman design, or any substantially similar design, including those to be identified during discovery, pursuant to §502(a) of the Copyright Act of 1976, as amended (17 U.S.C. §502(a)).

2. That Defendants be required to recall all infringing items and advertising and promotional materials, and thereafter to deliver up for destruction all infringing designs, artwork, packaging, advertising and promotional materials, and any means of making such infringing items, any molds, screens, patterns, plates, or negatives used specifically for making or manufacturing products with designs that picture, reproduce, copy, or bear a substantial similarity to Hoffman's Copyrighted Design, pursuant to §503 of the Copyright Act of 1976, as amended (17 U.S.C. §503).

3. That Defendants be directed to file with the Court and serve upon Hoffman within thirty (30) days after service of the judgment upon Defendants, a written report under oath setting forth in detail the manner in which the Defendants have complied with the requirements set forth above in paragraphs 1 and 2.

4. That Defendants be directed to account to Hoffman for all gains, profits and advantages derived from their wrongful acts pursuant to §504(b) of the Copyright Act of 1976, as amended (17 U.S.C. §504(b)).

5. That Defendants pay to Hoffman any damages sustained by Hoffman by reason of the Defendants' purposefully wrongful acts, together with interest thereon, pursuant to §504(b) of the Copyright Act of 1976, as amended (17 U.S.C. §504(b)).

6. That Hoffman be awarded statutory damages of (a) not less than $750 or more than $30,000 per individual infringing article pursuant to 17 U.S.C. §504(c)(1), or, upon a finding of willful infringement pursuant to §504(c)(2), up to $150,000 per individual infringing article.

7. That Defendants are holding, as constructive trustees for the benefit of Hoffman, any and all personal and/or real properties and assets consisting of and/or obtained by profits derived from Defendants' infringing activities, and that Hoffman be granted possession of these properties.

8. That Defendants pay to Hoffman its reasonable attorney's fees incurred in connection with this action, pursuant to §505 of the Copyright Act of 1976, as amended (17 U.S.C. §505).

9. That Defendants pay to Hoffman the costs and disbursements of this action pursuant to §505 of the Copyright Act of 1976, as amended (17 U.S.C. §505).

10. That Hoffman be awarded pre-judgment interest on any monetary award made part of the judgment against Defendants.

11. That Hoffman be awarded punitive damages.

12. That Hoffman be awarded such additional and further relief as the Court deems just and proper.

DATED: December 29, 2025

MEGAN E. GRAY
GrayMatters Law & Policy



__________________________________

Megan Gray
Attorney for Plaintiff,
Rube P. Hoffman Co., Inc.

DEMAND FOR JURY TRIAL

Hoffman gives notice of its demand for a jury trial in this matter.

DATED: December 29, 2025

MEGAN E. GRAY
GrayMatters Law & Policy



______________________________________

Megan Gray
Attorney for Plaintiff,
Rube P. Hoffman Co., Inc.